[Civ. No. 493.    Third Appellate District.—July 24, 1908.]

BANK OF MENDOCINO, Respondent, v. ALBERT BROWN, Appellant.

BANKS—INSOLVENCY—CLOSING UP BUSINESS—POWERS OF BANK COMMISSIONERS AND DIRECTORS.—Under the act creating the bank commissioners, as amended in 1895, it is not contemplated that the bank commissioners shall conduct in person the closing up of the business of an insolvent bank, or shall employ any persons, or fix the salaries of employees; but they are only empowered, in order to cause an expeditious and economical termination of its affairs by its directors, to fix the maximum limit of the number of persons to be employed by them, and the maximum limit of their salaries, and the board of directors may employ a less number, and fix their salaries at any figure within the limit fixed therefor.

ID.—ACTION TO RECOVER MONEY COLLECTED BY SECRETARY AND MANAGER—COMPENSATION NOT AGREED—QUANTUM MERUIT.—In an action by the directors of an insolvent bank to recover from its secretary and manager a sum collected by him, in excess of the value of his services, where it appears that no compensation was agreed upon, he is not entitled to retain the maximum sum fixed by the commissioners, but can only retain a sum to be determined upon a

*quantum meruit* as the reasonable value of his services; and the directors are entitled to recover the residue of the sum collected by him.

ID.—CONCLUSIVENESS OF FINDING AS TO REASONABLE VALUE—APPEAL FROM ORDER DENYING NEW TRIAL—AFFIRMANCE.—The finding of the court as to the reasonable value of the services of the secretary and manager must be deemed conclusive upon appeal from an order denying him a new trial, and where no error appears, the order must be affirmed.

APPEAL from an order of the Superior Court of Mendocino County denying a new trial.   J. Q. White, Judge.

The facts are stated in the opinion of the court.

Thomas, Pemberton & Thomas, for Appellant.

Mannon & Mannon, for Respondent.

HART, J.—This action was brought to recover from the defendant the sum of eleven thousand four hundred dollars ($11,400), alleged to have been collected and received by him for and on account of the plaintiff, while he was acting in the capacity of secretary and manager of the latter, and which said sum, it is averred, defendant still retains and refuses to turn over to said plaintiff.

The facts disclosed by the pleadings and the evidence are briefly these: On the tenth day of February, 1896, an action was instituted in the name of the people by the attorney general of the state, at the instance of the state bank commissioners, for the purpose of having the plaintiff adjudged insolvent, and that it was unsafe for said plaintiff to do business, and to have it enjoined from further carrying on business, except for the purposes of liquidation; that on the tenth day of March, 1896, a judgment was duly rendered and entered by the superior court of Mendocino county adjudging plaintiff insolvent and restraining it from further transacting business.   Defendant was employed as secretary and manager of plaintiff to close up its affairs, and performed that service, the same covering a period of five years.

The complaint alleges that plaintiff and its officers knew nothing of the money so collected and received for it by the defendant until June 26, 1905, when they were informed of

the fact by one F. W. Stickney, who had theretofore been employed by the board of directors of the corporation to examine the books of account kept by defendant, showing his transactions for and on account of plaintiff, and by which examination the discovery of defendant's failure to account to plaintiff for all the moneys received for it by him was made.

The defendant does not deny having received the money referred to in the complaint, but alleges that he retained the same in part payment of his compensation for his services as secretary and manager of plaintiff. He claims that his services were reasonably worth the sum of $200 per month, and that there is still due him, in addition to the amount sued for by plaintiff, the sum of $800, for which he asks judgment.

Defendant further alleges that this action is barred by certain provisions of the statute of limitations.

After hearing the evidence the court found that the sum of $11,400, as alleged in the complaint, had been collected and received by defendant for plaintiff; that the defendant retained the same; that the plaintiff or its officers had no knowledge of the collection of said sum by defendant prior to June 26, 1905, on which date they were informed of said transactions of defendant by said Stickney; that no fixed compensation for defendant's services was agreed upon, and that the same were reasonably worth the sum of $160 per month and no more; that the action is not barred by the statute of limitations; that the defendant performed services for the corporation between the first day of September, 1900, and the first day of June, 1905, for which he was entitled, in the aggregate, to the sum of $9,120, and that the plaintiff is entitled to judgment against defendant for the sum of $2,880.

This appeal is from the order denying the defendant a new trial.

No question is raised as to the sufficiency of the evidence to sustain the court's findings, the only point presented involving the rulings of the court rejecting evidence offered by the defendant in support of the claim that the state bank commissioners, after the plaintiff corporation had been adjudged insolvent and ordered into liquidation, fixed the sal-

ary of the defendant, as secretary and manager of said corporation, at the sum of $200 per month, and that he was therefore entitled to such salary.

Upon the controverted point it is the position of the appellant that, by the provisions of the law defining the powers of the bank commissioners, said officials are not only vested with the exclusive power of designating the number of persons to be employed in closing up the business of a banking institution in liquidation, but also of fixing the salaries of such employees.

The contention of the respondent is, and such was the view taken by the court below, that the law does not contemplate that the bank commissioners shall either employ or fix the salaries of the employees, but are only empowered, in order to cause an expeditious and economical termination of the affairs of a banking institution adjudged insolvent, to control the matter of the maximum number of employees to be employed to perform the work and to limit their salaries. It is argued that when the bank commissioners have fixed a limit within which such salaries shall be kept, the officers of the bank may then fix such salaries either up to or below the limit so fixed.

The law creating the bank commissioners and defining the powers of its members does not contemplate, in our opinion, that the business of winding up the affairs of an insolvent bank in liquidation shall be conducted in person by the bank commissioners themselves. To the contrary, it appears to be the purpose of the act to place the responsibility of closing up the affairs of such corporation upon its officers, who must carry on the work under the general supervision of the commissioners. This power of general supervision is expressly given, yet we doubt not that the very same power and the same authority could be exercised by said commissioners under the provision requiring them to examine the "condition of every such corporation, in liquidation, in the same manner as in the case of solvent banks." After providing that in case of vacancies occurring in the membership of the board of directors or trustees, the court in which the corporation has been adjudged insolvent and ordered into liquidation may, by appointment, fill the same, or may, for sufficient cause, remove any director or trustee, the act fur-

ther provides: ''Subject to this right of removal and appointment, the Directors or Trustees of all banking corporations in liquidation shall be permitted to conduct the management of the affairs of such corporations during the process of liquidation, under the direction of the Bank Commissioners,'' etc. From this, as well as from what appears to be the general scheme of the act, it was manifestly intended by the legislature that the business of closing up the affairs of a banking corporation in process of liquidation should be managed by the directors or trustees of such corporation, and that the bank commissioners are vested with authority over the directors and the affairs of the corporation for the purpose only of safeguarding the depositors and stockholders against an extravagant or fraudulent administration of the business. The act, as observed, provides that the bank commissioners shall limit the number of employees to be employed in closing up the affairs of an insolvent banking corporation. This power cannot, of course, be exercised by the directors or trustees; but it will not be doubted that after the number has been fixed by the commissioners, the directors, if they determine that the full limit will be unnecessary to conduct the business, may employ any less number. When the commissioners have fixed the limit beyond which the directors are not authorized to extend the number of employees, they have exercised all the power in that respect conferred upon them by the act. So, in the case of the salaries of the employees, when the commissioners have fixed the maximum limit of their salaries, the duty of those officers in that regard has terminated, and the directors may fix such salaries at less than the amounts so limited. In other words, as we construe the provisions of the act, as to the salaries of the employees, the commissioners may, by resolution or otherwise, declare the maximum amount which the directors may agree to pay to each employee as a salary, while the directors have the right to fix such compensation at any figure within such limit. This view is strengthened by a consideration of the amendment of the original provision with reference to the number of employees and their salaries by the legislature of 1895, and by a comparison of the language of said amendment with that of the law as it read prior to the change referred to. As the act read before said amendment, the bank

commissioners had "the power to *designate* the number of officers and employees necessary to close up the business of any such corporation, and to fix the salaries of the same." (See Stats. 1887, p. 92.) Under the amendment the board is given the power only of *limiting* the number of employees and also *limiting* the salaries of the same. (See Stats. 1895, p. 177.) There is obviously a wide distinction between the language of the provision as originally enacted and the language of the provision as amended. It is evident that if the legislature intended originally to vest full and exclusive power in the commissioners to absolutely control the number of employees and the matter of *fixing* their salaries, it has by the subsequent legislation on the subject withdrawn such power by leaving it with the directors of the corporation to *fix* both the number of employees and the amount of compensation to be paid to them for their services, after the commissioners have established the *limit* beyond which they are not permitted to go in either case. If, as we have suggested, the word "limit" as used in the statute, with reference to the salaries of the employees, is amenable to the interpretation contended for by the appellant, the same meaning must be attributable to the same word when used in connection with the number of employees to be employed in the work of closing up the affairs of an insolvent banking corporation. The result of such interpretation would be that, although the officers of such corporation are in a much better position than the bank commissioners to know and determine the number of employees actually necessary to do the work "expeditiously and economically," the former would have no discretion in the matter of the number of persons to be employed, but would be compelled to accept the full number limited by the commissioners. This would be perfectly absurd; yet it is plain that if the proposition contended for by appellant is maintainable, the other rests upon equally as strong reason and consequently equally as supportable.

The defendant pleads in one part of his answer an express agreement to pay him the sum of $200 per month as his salary, but does not allege between whom and himself such agreement was made. Doubtless, however, this allegation refers to the action of the bank commissioners fixing the *limit* of the salary to be paid him. There is no pretense that there

was any express agreement, to which the directors were parties, to pay the defendant the sum of $200 per month for his services, or any other specified amount. Having failed, whether from neglect or purposely is unimportant, to make an express agreement with the directors definitely fixing the compensation for his services, the defendant was required to rely upon a *quantum meruit*, and this he pleaded, and, at the trial, undertook to show that the reasonable value of the labor performed was $200 per month. The plaintiff's witnesses upon this point, however, variously fixed the value of his services at from $75 to $150 per month, and, as is conceded, the court's finding upon the question of the value of such services is conclusive here.

The excluded evidence, under the theory upon which it was offered, was immaterial, for the action of the commissioners fixing the limit of the salaries of the employees of an insolvent banking corporation in process of liquidation could be important only in a case where it was claimed that the salaries allowed or paid by the directors of such corporation were in excess of the limit fixed by the commissioners.

For the reasons herein given the order is affirmed.

Chipman, P. J., and Burnett, J., concurred.